# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR ZAMUDIO,<br><br>                      Petitioner,<br>vs.<br><br>McEWAN, Warden,<br><br>                      Respondent. | CASE NO. 12cv703-IEG (MDD)<br><br>REPORT AND RECOMMENDATION THAT PETITIONER'S MOTION TO STAY BE DENIED AND RECOMMENDING THAT THE PETITION BE DISMISSED.<br><br>[Doc. No. 5] |

On March 21, 2012, Petitioner filed a Motion for Stay and Abeyance, asking that the Court stay proceedings so that he may fully exhaust his state law remedies. (Doc. No. 5). Respondent filed an Opposition on May 23, 2012 (Doc. No. 11) and Petitioner filed a Reply on July 5, 2012 (Doc. No. 17).

**I.     Procedural History**

Petitioner was convicted on June 11, 2009 of rape with a foreign object, forcible oral copulation, two counts of burglary, robbery, and kidnaping. (Doc. No. 1). On direct appeal, the kidnaping charge, as well as several related enhancements were overturned. Id. His appeal to the California Supreme Court was denied on April 16, 2010. On June 11, 2010, Petitioner was resentenced on the remaining counts to twenty five years to life plus five years, four months.

Petitioner filed a federal Petition for a writ of habeas on March 21, 2012, concurrently with his Petition to the California Supreme Court and the instant Motion for Stay. Petitioner also requested an evidentiary hearing on the merits of his claims.

## II.  Discussion

In his Motion, Petitioner requests that a stay be issued so that he may properly exhaust his state court petition for habeas relief before pursuing his Federal Petition. Petitioner contends there are grounds for a stay under either <u>Rhines v. Weber</u>, 544 U.S. 269 (2005) or <u>Kelly v. Small</u>, 315 F.3d 1063 (9th Cir. 2003), because he was prevented from filing his state court petition for habeas relief.

Respondent counters that the stay is inappropriate under both <u>Rhines</u> and <u>Kelly</u> because all of Petitioner's claims are untimely and, regardless of whether a stay is issued and regardless of the outcome of Petitioner's state habeas petition, those claims will never become timely. (Doc. No. 11). Respondent also contends that even if Petitioner's claims were timely, a stay would still be inappropriate because Petitioner has not demonstrated good cause for a stay.

### A.  The Petition is Untimely

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year statute of limitations for the filing of a federal habeas petition by a state prisoner. Pub. L. No. 104-132, 110 Stat. 1214. The statute of limitations period as set forth in 28 U.S.C. § 2244(d)(1) begins to run on the date on which judgment became final by the conclusion of direct review. Here, Petitioner's conviction became final on August 10, 2010, at the expiration of the 60 day period during which he could have filed a direct appeal following his resentencing. Petitioner did not file his petition for habeas relief with this court until March 21, 2012, a total of 589 days later. Thus, unless Petitioner is entitled to statutory or equitable tolling, his claims are all untimely.

### B. Statutory Tolling

Petitioner is not entitled to statutory tolling. Under 28 U.S.C. § 2244(d)(2) the one year statute of limitations period is tolled when a properly filed petition for habeas relief is pending in state court. Here, Petitioner's state court petition was filed on the same day as his Federal petition. Thus, statutory tolling is inapplicable. Unless Petitioner is entitled to equitable tolling, his Federal Petition is untimely.

### C. Equitable Tolling

Petitioner is not entitled to equitable tolling. A petitioner is only entitled to equitable tolling of AEDPA's one-year statute of limitations "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir. 2003) (citing Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (*citing* Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990)).

The petitioner has the burden of showing that "extraordinary circumstances" were the cause of any untimeliness, rather than his lack of diligence. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Stillman, 319 F.3d at 1203. Further, "the threshold necessary to trigger equitable tolling [under AEDPA] is very high," Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citing U.S. v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)), with the result that equitable tolling is unavailable in most cases." Miles, 187 F.3d at 1107

Here, Petitioner cites several reasons for his delay in filing his petitions for habeas relief that he contends warrant equitable tolling. First, Petitioner contends that his appellate counsel failed to file a notice of appeal, even though Petitioner directed him to do so following his resentencing. Second, Petitioner asserts that

1  although he was able to prepare a notice of appeal himself and gave it to prison
2  officials for filing, it was never actually filed. (Doc. No. 5 at 6-7). Finally,
3  Petitioner contends that his difficulty speaking and understanding English
4  hindered his ability to inquire about his case and to prepare his petitions. (Doc.
5  No. 5 at 6; Doc. No. 17 at 2). Petitioner asks that the statute of limitations period
6  be tolled from August 2, 2010, the date he asserts he handed his notice of appeal to
7  prison officials, until September, 2011, when he began to seek out an inmate to
8  assist him in ascertaining the status of his case. If equitable tolling were applied
9  to that roughly thirteen month period, the Petition would be timely. Petitioner,
10 however, has not established the requisite diligence nor extraordinary
11 circumstances that would justify equitable tolling.

### 1. Counsel's Failure to File a Notice of Appeal

Petitioner contends that his appellate counsel failed to file a Notice of Appeal, even though counsel informed Petitioner that he intended to do so. (Doc. No. 5 at 2-3). Petitioner asserts that "from the dates of June 11, 2010" until "August 2, 2010, he was under the belief that a Notice of appeal had been filed." (Doc. No. 5 at 3). Even accepting Petitioner's account as true, counsel's failure to file a notice of appeal did not cause any undue delay or otherwise affect Petitioner's petitions for habeas relief. According to Petitioner, despite his counsel's failure to file the notice of appeal, Petitioner, with the help of fellow inmates, was able to timely prepare a notice of appeal. He provided the notice to prison officials for mailing on August 2, 2010. As described above, the statute of limitations period did not begin to run until August 10, 2010. Thus, his counsel's failure to file the notice of appeal and Petitioner's mistaken belief that a notice had been filed prior to August 2, 2010 are inconsequential.

26 / / /
27 / / /
28 / / /

### 2. Failure of Prison Officials to Mail Petitioner's Notice of Appeal

Petitioner also contends that he handed his notice of appeal to prison officials on August 2, 2010, the same day that he learned that his counsel did not file the notice. (Doc. No. 5 at 3). Petitioner attached to his Petition a copy of the notice that he allegedly provided to prison officials. (Doc. No. 1-1 at 68). According to Petitioner, prison officials never mailed the notice and never informed him that it had not been mailed. (Doc. No. 5 at 3). It is unclear from the filings if the letter was actually provided to prison officials and if so, why it was never filed. Petitioner also provided extensive prison mail logs and a copy of the letter that was mailed to the state court in October, 2011. (Doc. No. 1-1 at 53-60). These records indicate that prison officials were adequately permitting Petitioner to send and receive legal correspondence. Nevertheless, Petitioner asserts "from June 11, 2010 to October 18, 2011" he was under "the firm belief that a direct appeal of the proceedings" was being processed. Id. Petitioner asks that, because of the prison officials deliberate interference, the statute of limitations period be tolled prior to October 18, 2011. If that period were to be tolled, the Petition would be timely.

The wrongful conduct of prison officials can, in some circumstances, constitute an extraordinary circumstance beyond the prisoner's control. Redd v. McGrath, 343 F.3d 1077, 1084-85 (9th Cir. 2003). Even accepting Petitioner's allegations that prison officials refused to mail his notice of appeal as true, however, his subsequent actions display a lack of diligence that bars the court from applying equitable tolling. According to Petitioner, after he provided the notice of appeal to prison officials on August 2, 2010, he took no further action in his case until thirteen months later, when he became concerned about the status of his case and sought out other inmates to help him prepare an inquiry. Id. At no point during this thirteen month period did Petitioner inquire about his notice of appeal or otherwise attempt to ascertain the status of his legal proceedings. Only when

the extraordinary circumstance is the proximate cause of the untimeliness will equitable tolling be granted. Allen v. Lewis, 255 F.3d 798, 800 (9th Cir. 2001). Thus, even if a prison official's misconduct caused some delay, because Petitioner failed to diligently pursue his claim, equitable tolling is not available.

### 3.     Petitioner's Language Difficulties

Petitioner also contends that he encountered exceptional circumstances because he has difficulty reading and writing English. The language limitations of a petitioner, without more, do not justify equitable tolling. Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006). Where a Petitioner is able to find competent assistance, equitable tolling is unavailable. Id. Here, although Petitioner struggles with English, he has a demonstrated ability to understand and file legal documents. Petitioner was assisted by a translator when he spoke with his appellate counsel. When he learned that appellate counsel did not file a notice of appeal, he was able to timely prepare that notice and present it to a prison official. Petitioner also was able to send legal correspondence prior to filing his Petition, as noted in a prison communication log attached to the Petition. (Doc. No. 1 at 57-58). By his own admission, Petitioner did not even "seek out the advice of a competent inmate to read the letters" from his attorney until September, 2011. (Doc. No. 5 at 3). Once he sought out assistance, Petitioner was able to promptly find a competent assistant and further pursue his claim. Thus, it was not Petitioner's inability to read English that caused the delay, but rather Petitioner's delay in obtaining or attempting to obtain the assistance of an interpreter. Petitioner has failed to meet his burden of showing that "extraordinary circumstances" were the cause of any untimeliness, rather than his lack of diligence. Spitsyn, 345 F.3d at 799; Stillman, 319 F.3d at 1203. None of the impediments described by Petitioner amount to "exceptional circumstances" that would justify equitable tolling, and if Petitioner did experience exceptional circumstances, they were not the cause of his delay in filing. Accordingly, Petitioner is not entitled to tolling and his claims are

untimely.

### D. A Stay is Inappropriate

Because Petitioner's claims are untimely, a stay is inappropriate under either Rhines or Kelly. First, a stay can only be granted under Rhines if the Petitioner provides good cause for his delay in filing. 544 U.S. at 269. As discussed above, Petitioner has not shown good cause for his delay. Second, Kelly merely allows a petitioner to proceed on the exhausted claims in a mixed petition while he exhausts his unexhausted claims in state court. The petitioner must then amend his petition to reincorporate his previously unexhausted claims. This amendment process is still subject to the AEDPA's one-year statute of limitations period. Thus, even if the Petitioner brought his claims to state court and exhausted them, they would still be untimely and he would not be able to re-allege those claims in Federal court.

A stay would not alter the status of Petitioner's claims as untimely. Accordingly, a stay would be inappropriate and the Court **RECOMMENDS** that Petitioner's Motion for Stay be **DENIED**.

### E. No Evidentiary Hearing is Required

A habeas petitioner should receive an evidentiary hearing when he makes "a good-faith allegation that would, if true, entitle him to equitable tolling." Laws v. Lamarque, 351 F.3d 919, 919 (9th Cir.2003). Here, no evidentiary hearing is required. The Court has liberally construed Petitioner's filings and accepted all of Petitioner's allegations as true. All relevant dates are accepted as described by the Petitioner, and Petitioner's account of his own actions and the actions of prison officials has been fully accepted. Accordingly, there is no conflict in the facts that must be resolved through an evidentiary hearing.

### F. Sua Sponte Dismissal of the Petition is Warranted

Furthermore, when untimeliness is obvious on the face of a habeas petition, the district court has the authority to raise the statute of limitations *sua sponte*

and to dismiss the petition. Herbst v. Cook, 260 F.3d 1039, 1042 (9th Cir. 2001). "That authority should only be exercised after the court provides the petitioner with adequate notice and an opportunity to respond." Id. at 1043; see also Day v. McDonough, 547 U.S. 198, 210 (2006). For a pro se petitioner, the court must state the grounds for dismissal clearly and explain the consequences of failing to respond. Herbst, 260 F.3d at 1043 (citing Boyd v. Thompson, 147 F.3d 1124, 1128 (9th Cir. 1998)). These rules are consistent with "the well-established principle that a person is entitled to notice before adverse judicial action is taken against him." Id. (quoting Acosta v. Artuz, 221 F.3d 117, 121 (2d Cir.2000)).

As discussed above, it is apparent that the Petition is untimely under the AEDPA's one year statute of limitations period. Accordingly, the Court also **RECOMMENDS** that the Petition be **DISMISSED** with prejudice. Petitioner is hereby on notice that his claims are subject to dismissal. Though Petitioner has already addressed the timeliness of his claims in his Reply, he will have the additional opportunity to respond to the issue through objections to this Court's Report and Recommendation. If Petitioner does not respond, and the District Court adopts this Report and Recommendation, Petitioner's claims may be dismissed.

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying Petitioner's Motion for Stay and (3) Dismissing the Petition as untimely.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **August 22, 2012**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 5, 2012**. The parties are advised that failure to file objections within the specified time may

waive the right to raise those objections on appeal of the Court's order. See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

DATED: August 1, 2012

*[signature]*
Hon. Mitchell D. Dembin
U.S. Magistrate Judge