UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR ZAMUDIO,<br><br>                          Petitioner,<br>vs.<br><br>McEWAN, Warden,<br><br>                          Respondent. | CASE NO. 12cv703-BEN (MDD)<br><br>REPORT AND RECOMMENDATION FOLLOWING REMAND<br><br>[ECF No. 32.] |

## I. Introduction

This matter comes before the Court on remand following the District Court's Order Adopting in Part and Declining to Adopt in Part this Court's previous Report and Recommendation. (ECF No. 32.) The District Court remanded to this Court with direction to resolve two questions: (1) When did Petitioner's conviction become final? and (2) Is equitable tolling of the one-year statute of limitations period for filing a habeas petition warranted? (*Id.* at 9-10.)

/ / /

- 1 -

## II. Procedural History

Petitioner was convicted on September 4, 2008, of rape with a foreign object, forcible oral copulation, two counts of burglary, robbery, and kidnaping and sentenced to 25 years to life plus 14 years, 5 months. (ECF No. 1-1 at 20-21.) Petitioner appealed. (*Id.* at 20.) The California Court of Appeal overturned the kidnaping charge, as well as several related enhancements. (*Id.* at 21, 49). Petitioner appealed his remaining convictions to the California Supreme Court. (ECF No. 1 at 2.) His appeal was denied on April 20, 2010. (ECF No. 1-1 at 37.) On June 11, 2010, Petitioner was resentenced on the remaining counts to twenty five years to life plus five years, four months. (*Id.* at 49.) Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") with this Court on March 21, 2012, while his state court petition was pending. (ECF No. 1.) Petitioner filed a Motion for Stay and Abeyance on the same day as well as a motion requesting an evidentiary hearing on the merits of his claim. (ECF Nos. 4-5.) Respondent filed an Opposition to the motions on May 23, 2012 (ECF No. 11) and Petitioner filed a Reply on July 5, 2012 (ECF No. 17).

This Court issued a Report and Recommendation (R&R) recommending that Petitioner's motions be denied, and sua sponte to dismiss the Petition as untimely. (ECF No. 18.) District Judge Irma E. Gonzalez adopted the R&R in part and declined in part, and remanded for further briefing and recommendation on two issues: (1) when Petitioner's conviction became final and (2) the applicability of equitable tolling. (ECF No. 32).

///

- 2 -

## III. Discussion

### A. Timing of Petitioner's Final Conviction

In its order remanding the R&R, the District Court requested "[f]urther briefing on the issue of when Petitioner's conviction became final in light of California's prison-delivery rule." (ECF No. 32 at 4-5.)

In California, "a notice of appeal must be filed within 60 days after the rendition of the judgement." Cal. Rules of Court R. 8.308(a). Absent an appeal, after 60 days the conviction becomes final. *Id.* As noted by the District Court, "a prisoner's notice of appeal is deemed timely if delivered to prison officials within the filing period." *In re Jordan*, 4 Cal. 4th 116 (1992); ECF No. 32 at 4.

Petitioner was sentenced on June 11, 2010. (ECF No. 1 at 1.) Thus, unless he timely filed an appeal, his conviction would be final on August 10, 2010. Cal. Rules of Court R. 8.308(a). In his Petition, Petitioner claims he handed a notice of appeal to one of the prison guards on August 2, 2010. (ECF No. 1 at 30.) Petitioner attached as an exhibit to his Petition a hand-written copy of his alleged notice of appeal and proof of service, both dated August 2, 2010. (ECF No. 1-1 at 69-71.) Neither bear any indication that they were received by prison or court officials. Petitioner contends that this notice initiated his appeal. (ECF No. 1 at 35.)

On September 26, 2011, Petitioner wrote a letter to the clerk of the court of San Diego Superior Court requesting court papers related to his case, including a copy of the notice of appeal purportedly filed on the date of resentencing. (ECF No. 1-1 at 47.) The clerk responded, but did not attach a copy of the alleged notice of appeal. (*Id.* at 48.) Petitioner then

- 3 -

1 wrote a letter to the trial judge with another copy of the alleged notice of
2 appeal on October 18, 2011, and requested that the notice of appeal be
3 filed and dated August 2, 2010, the date he purportedly handed the
4 notice to prison guards. (*Id.* at 61-67.) There is no evidence of the court's
5 response. Petitioner next filed his Petition with this Court on March 21,
6 2012. (ECF No. 1.) There is no evidence that the state court has ever
7 received the notice of appeal and Petitioner did not subsequently pursue
8 his appeal.

9 Petitioner was provided with the opportunity to provide
10 supplemental briefing on this topic but contends that he is unable to
11 address the issue any further than already has. (ECF No. 37 at 2.)

12 In their Supplemental Briefing, Respondents contend that the
13 prison delivery rule is inapplicable and that Petitioner's conviction
14 became final on August 10, 2010, 60 days after Petitioner was sentenced,
15 pursuant to Cal. Rule of Court R 8.308(a). Respondents contend that the
16 prison delivery rule is inapplicable because "the court never received the
17 purported notice of appeal." (ECF No. 36 at 3.) Respondents note that
18 the first time Petitioner mentioned a notice of appeal was on October 18,
19 2011, in a letter to the superior court, over a year after Petitioner
20 contends he submitted the notice of appeal to prison officials.[1] (*Id.*)

---

[1] Respondents also note that Petitioner's account of filing a notice of appeal on August 2, 2010, is contradicted by other statements Petitioner has made. Specifically, Petitioner brought a claim for ineffective assistance of counsel in his state petition on the grounds that his counsel had failed to file a notice of appeal. (ECF No. 33 at 2; ECF No. 31, Ex. A.) The Court notes that Petitioner acknowledged in his Petition, "For all purposes, after the resentencing on June 11, 2010, this petitioner's conviction became final 60-days after that resentencing hearing. Thus this petitioner's AEDPA limitations period began on August 10, 2010, 60-days after his resentencing." (ECF No. 1 at 32.)

- 4 -

Respondents contend that the prison delivery rule of *In re Jordan* is not triggered unless the court actually receives the notice of appeal at some point.

In *In re Jordan,* the California Supreme Court stated,

> We therefore hold that a prisoner's notice of appeal is deemed to have been filed in the office of the appropriate county clerk on the date, within the filing period prescribed by rule 31(a), on which it was delivered to prison authorities. If the notice of appeal is received by the county clerk following expiration of the 60-day filing period, the prisoner who seeks to pursue his or her appellate rights has the burden of establishing that the notice of appeal was delivered to prison authorities within the 60-day period.

4 Cal. 4th at 130. *In re Jordan* is a narrow holding that allows the county clerk to accept a notice of appeal for filing even if it is received by the clerk past the 60-day period, provided that the notice was handed to prison authorities before the 60-day period expired. *Id.* It does not purport to grant an irrebuttable presumption that such a document was actually filed, nor does it purport to grant the court authority to extend the 60-day filing deadline based on the prisoner's mere claim that a notice had been filed.

The California Supreme Court explained that the purpose of the prison delivery rule is to provide a prisoner an equal opportunity to file an appeal "fully comparable to that provided to a defendant who is represented by counsel or who is not confined." *Id.* If a non-incarcerated defendant claimed to have filed a notice of appeal without any record of the notice being sent or received and the defendant did not follow up on the notice of appeal for over a year, there is little question that appeal would be deemed untimely. Interpreting *In re Jordan* as Petitioner urges would fundamentally undermine *Jordan*'s equality principle. Accordingly, *In re Jordan* must be narrowly interpreted to allow for only

the backdating of a notice of appeal that has been received by the county clerk.

Pursuant to that interpretation, the prison delivery rule does not apply here. Although Petitioner claims he handed a notice of appeal to prison guards on August 2, 2010, there is no corroborating, independent evidence in the record. No court has a record of receiving this document and Petitioner himself has been inconsistent in claiming that it was actually filed. Petitioner's failure to pursue the matter with any court for more than one year further supports finding the Petition untimely. Accordingly, Petitioner's conviction became final on August 2, 2010, 60 days after his sentencing. Cal. Rules of Court R. 8.308(a).

## B.     Equitable Tolling

The District Court also requested further briefing on the issue of whether equitable tolling is warranted based on Petitioner's claim that he had no available assistance in drafting and filing a petition. (ECF No. 32.) Specifically, the District Court noted:

> Petitioner has raised several factors that he argues affected his ability to timely file the Petitioner, including his status as a sex offender and his inability to read and write in either English or Spanish [. . .] Petitioner's objection has raised the question that the factors in combination, in addition to his continuing efforts to obtain assistance, may warrant equitable tolling for the period of time following the 6-month period after he gave his notice of appeal to prison officials.

(*Id.* at 8-9.)

The District Court ordered additional briefing on this topic so that the matter would be squarely before the Court. The District Court held that Petitioner is not entitled to tolling based on Petitioner's Counsel's failure to file a notice or appeal, and that Petitioner is not entitled to tolling from August 2, 2010 through

- 6 -

1 February 2011. Thus, this R&R only addresses the narrow issue
2 of whether Petitioner is entitled to tolling from February 2011
3 through September 12, 2011 based on Petitioner's language
4 limitations and status as a sex offender. (ECF No. 32.)

5     The language limitations of a petitioner, without more, do
6 not justify equitable tolling. *Mendoza v. Carey*, 449 F.3d 1065,
7 1070 (9th Cir. 2006). Where a non-English speaking petitioner
8 claims equitable tolling on the AEDPA time limitation because of
9 a language barrier, the petitioner "must, at a minimum,
10 demonstrate that during the running of the AEDPA time
11 limitation, he was unable, despite diligent efforts, to procure
12 either legal materials in his own language *or translation*
13 *assistance from an inmate, library personnel, or other source*." *Id.*
14 (emphasis added.) Where a petitioner is able to find competent
15 assistance, equitable tolling is unavailable. *Id.*

16     "The threshold necessary to trigger equitable tolling [under
17 AEDPA] is very high." *Miranda v. Castro*, 292 F.3d 1063, 1066
18 (9th Cir. 2002) (citing *U.S. v. Marcello*, 212 F.3d 1005, 1010 (7th
19 Cir. 2000)). As a result, "equitable tolling is unavailable in most
20 cases." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).
21 Generally, a litigant seeking equitable tolling bears the burden of
22 establishing two elements: (1) he has been pursuing his rights
23 diligently; and, (2) some extraordinary circumstance stood in his
24 way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (*citing Irwin*
25 *v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990)). The
26 petitioner has the burden of showing that "extraordinary
27
28

1 circumstances" were the cause of any untimeliness, rather than
2 his lack of diligence. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir.
3 2003); *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003).
4 Petitioner must diligently pursue his rights; ignorance of the law
5 does not constitute an extraordinary circumstance and a pro se
6 petitioner's "lack of legal sophistication is not, by itself, an
7 extraordinary circumstance warranting equitably tolling."
8 *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

In his Supplemental Briefing, Petitioner reiterates that he has no language skills and, once he learned that something was wrong with his appeal, he diligently searched for someone to help him. (ECF No. 37 at 2-3.) In their Supplemental Briefing, Respondents contend that Petitioner's language difficulties do not justify equitable tolling because Petitioner had access to a translator who was able to assist him in filing the Petition once he decided to do so. (ECF No. 36 at 5.)

After a thorough consideration of Petitioner's reported difficulties in filing his Petition, including his language difficulties and status as a sex offender, the Court finds that Petitioner is not entitled to equitable tolling.

First, while Petitioner contends that he is illiterate and that he did not have any competent legal help or translation assistance available, he also states that his cellmate acted as a translator for his conversations with the prison law clerk and between and with other inmates. (ECF No. 31, Ex. B at 7, Ex. C.) Petitioner was able to send a letter to his legal counsel on June 1, 2011, contrary

to his claim that he lacked inmate assistance before September 2011. Further, he claims he was able to draft a notice of appeal. (ECF No. 1-1 at 57-58, 69.) Thus, although Petitioner struggles with language issues, his filings demonstrate that he was able to secure the services of a translator to file and receive legal documents. This falls short of the high bar required for equitable tolling. *Miranda*, 292 F.3d at 1066 .

Petitioner's tolling argument also relies on Petitioner's claim that he was without legal assistance. He repeatedly references his lack of access to "legal help" and his search for someone to perform "legal work." (ECF No. 31 at 8-9.) To the extent that Petitioner contends that his lack of legal sophistication contributed to his inability to prepare his Petition, that does not constitute extraordinary circumstances. *Bonin v. Vasquz*, 999 F.2d 425, 430 (9th Cir. 1993); *Rasberry*, 448 F.3d at 1154. Under *Mendoza*, equitable tolling is unavailable if the inmate is able to procure "translation assistance from an inmate, library personnel, or other source." *Mendoza*, 449 F.3d at 1070. Translation services do not include legal advice. *Rasberry*, 448 F.3d at 1154. While Petitioner often states that he lacked legal assistance, Petitioner has not demonstrated in any of his pleadings that he was incapable of timely filing his Petition because he lacked translation services. Rather, his own pleadings show that he had ready access to a translator, his cellmate, and that he was able to file and receive legal documents prior to September 2011. While his lack of language skills likely made it more difficult for

Petitioner to file his Petition, given the availability of a translator, Petitioner's difficulties do not rise to the level of exceptional circumstances. *Mendoza*, 449 F.3d at 1070.

Second, Petitioner's access to a capable translator also negates his claim that his status as a sex offender affected his ability to timely file his Petition. While his status may have made it more difficult for Petitioner to obtain legal advice or to find someone to actually draft his Petition on his behalf, nothing in the record suggests it affected his access to a translator. Rather, Petitioner's filings indicate that his cellmate translated for him on numerous occasions despite his status as a sex offender. Even considered along with Petitioner's language difficulties, Petitioner's status as a sex offender does not constitute extraordinary circumstances. Petitioner has not demonstrated that he was incapable of timely filing his Petition. Rather, Petitioner has shown that he had access to translation services. *Mendoza*, 449 F.3d at 1070. While Petitioner may not have had access to legal assistance, that does not constitute extraordinary circumstances. *Rasberry*, 448 F.3d at 1154.

Finally, even if Petitioner was confronted with extraordinary circumstances, he was not diligent in pursuing his rights. Petitioner has previously claimed that he did not begin to seek the assistance of a translator to help look into his case until September 2011, more than one year after he purportedly handed the notice of appeal to prison guards. (ECF No. 5 at 3.) Upon becoming concerned with the status of his appeal, according to

- 10 -

Petitioner, he obtained the assistance of another inmate in and "began his research" into the status of his case also in September 2011. (*Id.*) The delay from August 2010, to September 2011, in pursuing the status of his appeal does not reflect diligence and bars equitable tolling. *Mendoza*, 449 F.3d at 1070.

More recently, Petitioner stated that he actually became concerned about his Petition in February 2011, and began looking for assistance at that time, finally getting translation help from a cellmate in September 2011. Even if true, Petitioner has not established that he diligently pursued his rights between February 2011 and September 2011. Petitioner, despite his claim that he was without assistance prior to September 2011, was able to send a letter to his attorney in June 2011. (ECF No. 1, Ex. A at 56.) He received a response from his attorney on June 15, 2011. Petitioner does not explain why he continued to wait to file his Petition despite being in correspondence with his attorney. Even granting Petitioner tolling from February 2011, until June 15, 2011, his Petition is still untimely. There is no basis for tolling from August 10, 2010, until February 2011. Granting four months and fifteen days of tolling from February 2011 to June 15, 2011, when Petitioner corresponded with his attorney, Petitioner would have been required to file his Petition on January 3, 2012. Petitioner did not file until March 2012 and there appears no reason to toll the time from January through March 2012. Thus, even granting Petitioner some period of tolling based on his language difficulties and status as a sex offender, the Petition is

- 11 -

still untimely.

Respondent also contends that no tolling is appropriate because Petitioner was able to eventually find someone to prepare his Petition on his behalf for $1,200. (ECF No. 36 at 6.) While the Court agrees that Petitioner would not be entitled to tolling if he had the option to pay for legal services at any time, it is not apparent from the record that this option was available to Petitioner throughout the process. Rather, Petitioner contends that his previous attempts to pay for services were unsuccessful because the inmate offering legal services was charging too much money. (ECF No. 31.) The Court is not denying tolling on the basis that Petitioner eventually was able to pay someone to assist him.

Pursuant to AEDPA, all federal habeas petitions are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d). A petitioner is only entitled to equitable tolling of AEDPA's one-year statute of limitations "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Stillman*, 319 F.3d at 1202 (internal citations omitted.) Here, Petitioner did not pursue his claim until over a year after his conviction, despite available translation services, and did not file his Petition until March 2012. Petitioner was not confronted with extraordinary circumstances sufficient to justify equitable tolling. *Miranda*, 292 F.3d at 1066. Accordingly, equitably tolling is not warranted and Petitioner's claim should be dismissed as untimely.

///

## V. Conclusion

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Petitioner's request for Equitable Tolling be **DENIED**.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **May 16, 2014**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **May 30, 2014**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: April 24, 2014

**Hon. Mitchell D. Dembin**
**U.S. Magistrate Judge**